**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | |
|---|---|
| **SONJA CARSWEL, *et al.*,**<br><br>***Plaintiffs*,**<br><br>**v.**<br><br>**CORRECTHEALTH WALTON LLC, *et al.*,**<br><br>***Defendants*.** | **CIVIL ACTION NO.<br>3:25-cv-00176-TES** |

**ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL**

On October 1, 2023, officers arrested Decedent Robin Milton for shoplifting and took her to jail.[1] [Doc. 1, ¶ 3]. While in jail, officers used pepper spray and "hands-on force" until EMS transported her to the hospital. [*Id.* at ¶¶ 20–21]. After she was discharged from the hospital, she returned to the jail's medical isolation unit where she lost 28 pounds over four weeks. [*Id.* at ¶¶ 32, 34]. She then transferred back to her original cell where she did not eat or sit up. [*Id.* at ¶¶ 35–40]. Weeks later, she was rushed to the hospital and died the following day. [*Id.* at ¶¶ 72–75].

Before the court is a motion to compel by Plaintiffs Sonja Carswell and Daisha Milton, the Decedent's mother and daughter. [*Id.* at ¶¶ 6–7]; [Doc. 20]. In it, they seek

---

[1] At this procedural stage, the only sources for factual allegations are Plaintiffs' complaint and Defendants' answers denying many of the allegations in the complaint. [Doc. 1]; [Doc. 7]; [Doc. 8]; [Doc. 12]. The Court provides these factual allegations from Plaintiffs' complaint only as context, without deciding any disputed facts.

several pages of mental health notes concerning Decedent from Defendants CorrectHealth Walton and CorrectHealth. [Doc. 1]. Plaintiffs seek, specifically, pages from three records created during Plaintiffs' time in the medical isolation wing of the jail.[2] [*Id.* at p. 2]. The two records relevant to this order are Carlos Amos's October 30, 2023, "Mental Health Intake Form," and his November 9, 2023, follow-up appointment with Decedent. [*Id.*]. In redacting these records, Defendants assert the psychotherapist-patient privilege. [Doc. 23, p. 3].

Since jurisdiction here is premised on a federal question (although with pendant state law counts), federal law controls. *Hancock v. Hobbs*, 967 F.2d 462, 466–67 (11th Cir. 1992); *see also* Fed. R. Evid. 501. In the Eleventh Circuit, the burden of establishing a federal privilege is on the asserting party. *In re Renco Grp. Inc.*, 164 F.4th 1336, 1347 (11th Cir. 2026) ("the burden still rests squarely on the asserting party to substantiate its claim of privilege with a document-by-document explanation.").[3] Therefore, Defendants have the burden to substantiate their assertion of a privilege with a document-by-document explanation. *Id.* If Defendants meet that showing, the Court is required to "assess the validity of each claim, document-by-document 'by either conducting a hearing or

---

[2] One of those three records is Nurse Campbell's October 3, 2023, entry. [Doc. 20, p. 2]. Defendants acknowledged that this record was redacted mistakenly and provided Plaintiffs with this unredacted record prior to the issuance of this order. [Doc. 23, p. 10]; [Doc. 24, p. 3]. So, any motion regarding that particular record is now moot.

[3] *Renco* specifically involved the attorney-client and work-product privileges. 164 F.4th at 1344. The Court applies it here because its discussion of burden is generalized, and as discussed further below, courts frequently look to the attorney-client privilege when considering the psychotherapist-patient privilege.

inspecting the documents *in camera*.'" *Id.* (quoting *In re Grand Jury Subpoena*, 831 F.2d 225, 226 (11th Cir. 1987)). Defendants have provided a generalized showing of why the privilege should attach to Decedent's psychiatric records but did not make a document-by-document showing. *See generally* [Doc. 23]. Without this showing, they are likely not entitled to assert the psychotherapist-patient privilege.

Since there are only two documents and Defendants did make some showing—even if it wasn't document-by-document—the Court conducted an *in camera* inspection of the documents at issue.[4] Indeed, even though Defendants might not have met their burden, the parties do not dispute that the privilege applies to the records written by Amos. [Doc. 20, p. 8 ("Plaintiffs recognize that under *Jaffee*, the psychotherapist-patient privilege extends to licensed counselors such as Amos.")]. Instead, they disagree over whether, as Plaintiffs put it, "a personal representative and estate [may] waive their decedent's psychotherapist-patient privilege when they bring claims against the decedent's mental health provider[.]" [Doc. 24, p. 1].

The United States Supreme Court expressly recognized the federal psychotherapist-patient privilege in 1996. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). In defining the contours of this privilege, the Court explicitly rejected "the balancing component" that lower courts and several states were using at the time. 518 U.S. at 17.

---

[4] The parties only dispute the psychotherapist-patient privilege, so the Court did not review the records for relevance or other potential admissibility arguments.

Specifically, the Court said that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* In short, the privilege needs to be predictable to fulfill its purpose. *Id.* at 18 (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 393 (1981)).

The Supreme Court did not make the psychotherapist-patient privilege absolute. Instead, "[l]ike other testimonial privileges, the patient may of course waive the protection."[5] *Id.* at p. 15 n.14. In the case at hand, the parties' arguments each seize on different parts of this statement. Defendants focus on "the patient," arguing that only Decedent herself could have waived the privilege. [Doc. 23, pp. 4, 8–10]. Plaintiffs, on the other hand, focus on "[l]ike other testimonial privileges," arguing that an estate can waive other federal privileges, so this privilege—being "[l]ike other[s]"—is similarly waivable. [Doc. 24, p. 5]. Unlike the state psychotherapist-patient privilege in Georgia and many other states, the Supreme Court and Eleventh Circuit have not explicitly stated whether the federal privilege may be waived post-death. *See Cooksey v. Landry*, 761 S.E.2d 61, 65 (Ga. 2014) (Georgia law does not allow waiver post-death).

In the absence of binding precedent and without a test, the Court must turn to the decisions of other courts and to similar federal privileges to inform its decision.

[5] Nothing on the record here shows that Decedent waived the privilege for this particular Defendant prior to her death. [Doc. 20, p. 8]. The records reviewed in camera indicate she waived it for another provider.

First, the decisions of other courts cited by the parties favor waiver. [Doc. 20, pp. 6–10]; [Doc. 23, p. 4]; [Doc. 24, pp. 5–6].[6] In *McConico v. Vill. of Carol Stream*, cited by Plaintiffs, the court analyzed whether the plaintiffs, who were the decedent's sisters and administrators of his estate, waived the psychotherapist-patient privilege. No. 24-CV-1654, 2025 WL 1638481, at *1–2 (N.D. Ill. June 10, 2025). The court concluded that the estate did not waive the privilege, but its analysis assumed that the estate could have waived it. *Id.* at *4–5; *see also Est. of DiPiazza v. City of Madison*, No. 16-cv-060-WMC, 2017 WL 1828920, at *3–5 (W.D. Wis. May 5, 2017) (similarly discussing whether an estate waived the privilege with an assumption that it could). The court in *Lindsey v. City of Pasadena*, also cited by Plaintiffs, expressly held that an estate waived the privilege. No. CV 16-08602-SJO(RAOx), 2018 WL 6164262, at *3 (C.D. Cal. Jan. 9, 2018); *see also Est. of Oliva v. New Jersey*, No. CV 01-2259 (JEI), 2007 WL 9782703, at *1 (D.N.J. Aug. 1, 2007) (explicitly rejecting the argument that only the decedent, and not his personal representative, can waive the privilege).

---

[6] Defendants cite *Awalt v. Marketti*, 287 F.R.D. 409, 416 (N.D. Ill. 2012) (considering other federal caselaw, comity between the state privilege and federal privilege, and the Supreme Court's treatment of the attorney-client privilege to conclude that the psychotherapist-patient privilege survives the patient's death)). Plaintiffs cite *Lindsey v. City of Pasadena,* No. CV 16-08602-SJO(RAOx), 2018 WL 6164262, at *3 (C.D. Cal. Jan. 9, 2018) (estate waived privilege by alleging that decedent was suffering from a mental health crisis); *McConico v. Vill. of Carol Stream*, No. 24 CV 1654, 2025 WL 1638481, at *2–4 (N.D. Ill. June 10, 2025) (detailing different courts' approaches to waiver and applying that to an estate); *Emmett v. E. Dispensary & Cas. Hosp.*, 396 F.2d 931, 935 (D.C. Cir. 1967); *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1450–51 (10th Cir. 1990); *Smith v. Pangle*, No. 4:04-CV-0282-HLM, 2006 WL 8553674, at *3 (N.D. Ga. Mar. 6, 2006); *Mann v. Taser International*, No. 4:05-CV-0273-HLM, 2007 WL 9712074, at *6 (N.D. Ga. Feb. 14, 2007).

Defendants did not point to any cases holding that an estate cannot waive the privilege. Instead, the psychotherapist-patient privilege case Defendants cited indicated that an estate *could* waive the privilege but just did not do so there.[7] *See Awalt*, 287 F.R.D. at *418–19. The decisions of other courts, therefore, support Plaintiffs' argument that the estate can waive the psychotherapist-patient privilege.

Analogous federal privileges also favor waiver. Plaintiffs point to HIPAA, attorney-client privilege, and the substance use disorder privilege. [Doc. 23, p. 6]; [Doc. 24, p. 3]. An estate has access to information protected by attorney-client privilege and HIPAA. *See United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011) (attorney-client privilege); 45 C.F.R. § 164.502(g)(4) (HIPAA). Estates also have control over information protected by the substance use disorder privilege. 42 C.F.R. § 2.15(b)(2) (substance use disorder privilege). Absent explicit binding precedent, these principles from other privileges are, of course, not dispositive. But the Supreme Court used both the spousal and attorney-client privileges to establish the psychotherapist-patient privilege. *Jaffee*, 518 U.S. at *10–11 (discussing similarities between the psychotherapist-patient privilege and both the attorney client privilege and the spousal privilege). Following suit, courts consider other privileges—particularly attorney-client privilege—when analyzing the psychotherapist-patient privilege. *See, e.g.*, *Awalt*, 287 F.R.D. 409, 416 (N.D. Ill. 2012) (looking to attorney-client privilege in psychotherapist-patient privilege analysis). The

---

[7] *Awalt* also supports Defendants' assertion of the privilege on behalf of Decedent. 287 F.R.D. at *414–15.

other federal privileges used by the parties—particularly HIPAA and the attorney-client privilege—also favor a finding that an estate can waive the psychotherapist-patient privilege.[8]

In summary, it is "well-established law" that an estate may "step into [the] shoes" of a decedent when bringing a lawsuit. *Brown v. MedScope Am. Corp.*, No. 4:21-cv-71 (CDL), 2024 WL 666495, at *1 (M.D. Ga. Feb. 16, 2024). It is also unmistakably clear that Decedent here had the authority to waive the psychotherapist-patient privilege. *Jaffee*, 518 U.S. at 15 n.14. Absent binding or persuasive caselaw to the contrary, the Court sees no reason why the estate should not be able to stand in Decedent's shoes and waive the privilege here. Indeed, such a decision is consistent with other federal privileges and with other courts who have addressed this issue. Accordingly, the Court **GRANTS** Plaintiffs' motion to compel, and **ORDERS** Defendants CorrectHealth and CorrectHealth Walton LLC to provide Plaintiff with unredacted copies of the documents at issue in this motion within **10 days** of this order.

[8] Defendants also argue that the Court should consider Georgia's psychotherapist-patient privilege. [Doc. 23, p. 7]. Both parties agree that Georgia law has a definitive answer to the question presented here: the estate cannot waive the privilege. *Cooksey*, 761 S.E.2d at 65; [Doc. 23, p. 7]; [Doc. 20, p. 9]. While one of the cases Defendant cited considers its underlying state's privilege in defining the federal privilege, the Court declines to do so here. *See Awalt*, 287 F.R.D. at 415 (analyzing Illinois's privilege). Federal common law should be uniform, and, while comity is important, grafting an individual state's requirements into federal common law would undermine its uniformity. *Cf. Williams v. Taylor*, 529 U.S. 362, 389–90 (2000) (discussing the "well-recognized interest in ensuring that federal courts interpret federal law in a uniform way" while analyzing a statute). Furthermore, even if the Court accepted Defendants' argument as true, it is not clear whether Defendants would be entitled to Georgia's privilege in the first place. *See Hicks v. Talbott Recovery Sys., Inc.*, 196 F.3d 1226, 1237 (11th Cir. 1999) (stating that the patient must have voluntarily sought the assistance of the psychiatrist or psychologist for the privilege to attach in Georgia).

**SO ORDERED**, this 28th day of September, 2026.

*S/ Tilman E. Self, III*

**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**